# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| In re: | ) CASE NO. 19-40262- BEM |
| | ) |
| ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC | ) CHAPTER 11 |
| | ) JUDGE ELLIS-MONRO |
| Debtor. | ) |
| | ) |
| MIDCAP FUNDING INVESTMENT IV, LLC, | ) |
| Movant | ) |
| v. | ) CONTESTED MATTER |
| ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC, | ) |
| Respondent. | ) |

## OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN

COMES NOW, MidCap Funding Investment IV, LLC ("MidCap"), secured creditor of the Debtor Aspen Village at Lost Mountain Assisted Living, LLC ("Assisted Living"), and objects to confirmation of Debtor's proposed Fourth Amended Chapter 11 Plan dated April 15, 2019, including all modifications thereto with the latest being the Fourth Modification to Plan of Reorganization dated December 2, 2019 (collectively the "Plan"), on the grounds it does not comply with 11 U.S.C. § 1129 and is non-confirmable on its face, including but not limited to the following:

### I.   The Plan Fails to Meet the Requirements of 11 U.S.C. § 1129

1. The Court has an affirmative duty to ensure that the Plan satisfies "all thirteen requirements of 11 U.S.C. § 1129(a), . . .." *Liberty Nat'l Enters. V. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997). Debtor bears the burden of proof with respect to each confirmation requirement and must satisfy that burden by a preponderance of the evidence. *See Cutcliff v. Reuter (In re Reuter)*, 427 B.R. 727, 769 (Bankr. W.D. Mo. 2010) (citation omitted).

2. Under section 1129(a)(11), a plan must be feasible. At a minimum, where a plan provides for deferred payments over time, a showing of feasibility requires the proponent to establish two components. First, the projections of future expenses and earning must be derived from realistic and reasonable assumptions that are not merely speculative. Second, the ability to make the payments proposed must be demonstrated based on the projections.

3. "[P]rojections must be based upon evidence of financial progress and must not be speculative, conjectural, or unrealistic." *F.H. Partners, L.P. v. Inv. Co. of the Southwest, Inc. (In re Inv. Co. of the Southwest, Inc.)*, 341 B.R. 298, 311 (B.A.P. 10th Cir. 2006). "A glaring discrepancy between the facts surrounding past performance and activity and predictions for the future is strong evidence that a debtor's projections are flawed and the plan is not feasible." *Id.; see also In re Novak,* 102 B.R. 22, 24 (Bankr. E.D.N.Y. 1989) ("income projections must be based on concrete evidence and must not be speculative or conjectural.").

      **A.**    **The Revenue and Census Projections are Unreliable Under 11 U.S.C. § 1129(a)(11).**

4822-4846-1742 v1

4. The occupancy rate of 90% contained in the Projections is inconsistent with the Debtor's historical occupancy.

5. According to the testimony of Joyce Pearson, consultant to Debtor, Assisted Living has never had an occupancy rate of greater than 85%, which was back in 2015.

6. With a capacity of 95 residents in 88 units, the Debtor has never had more than 75 residents at one time.

7. As of November 13, 2019, the census was 70, which is 80% occupancy. A copy of Debtor's Census Tracking for the last two years is attached as Exhibit "A."

8. The Projections do not make any provision for the significant increase in expenses, i.e. medical and kitchen staff, needed to support a facility at 90% capacity let alone the increased capacity Debtor projects for Memory Care.

9. Payroll is completely inadequate to sustain staffing levels, and Debtor is currently struggling to meet its obligations to residents at 80% capacity.

### B. Liquidation will be Necessary at a Later Date.

10. If the Plan is confirmed despite it being unfeasible, Debtor will be liquidated at a later date since it is continuing to operate as it always has. "When assessing whether a plan of reorganization is feasible, bankruptcy courts consider factors such as the adequacy of the debtor's capital structure, the earning power of the business, economic conditions, the ability of management, the probability of the continuation of the same management, and

3

any other related matter." *In re Diplomat Constr., Inc.*, No. 09-68613-MGD, 2009 WL 6498180, at *2 (Bankr. N.D.GA. Nov. 20, 2009).

11. Debtor intends to fund the Plan with "(1) continued operation of the Assisted Living Facility, and (2) future sale, leasing or refinancing of the Assisted Living Facility." (Doc 76, ¶ 6.2, p. 20). No significant changes in operation are referenced in this section that would support the feasibility of the Plan.

12. On November 23, 2019, the Atlanta Journal-Constitution published a newspaper article (the "Article") highlighting the results of its investigation into the quality of care at various senior care facilities in the Atlanta area, including The Lodge at Aspen Village (the "Lodge"). A copy of the Article is attached hereto as Exhibit "B." [1]

13. Among other things, the Article discussed an August 27, 2019 inspection survey completed by the Georgia Department of Community Health ("DCH") of the Lodge in response to complaints from residents of the Lodge. A copy of the August 27, 2019 Survey Report issued by DCH is attached hereto as Exhibit "C."

14. According to the Survey Report, DCH cited the Debtor for four (4) serious violations of Georgia's Rules and Regulations for Personal Care Homes, including:

(1) failing to provide sufficient staff at meal times;

(2) failing to provide sufficient staff time such that each resident received proper care to prevent pressure ulcers and contractures;

---

[1] The article can also be found online at the following address: https://www.ajc.com/news/state--regional/senior-home-gold-rush/30n0seXnMlGtEkC00PxRSK/.

4

4822-4846-1742 v1

(3) failing to ensure admission of only ambulatory residents who were capable of self-preservation with minimal assistance; and

(4) failing to retain a record of incidents and accidents. *(See* Ex. C, Survey Report).

15. The findings by DCH are rather alarming and demonstrate a severe inadequacy of staffing by the Debtor. The Survey Report also shows that the Debtor has improperly admitted residents who need greater care than can be provided at an assisted living facility such as the Lodge.

16. If a Plan is likely to be followed by liquidation, or the need for further financial reorganization, of the debtor . . . it is not feasible. *In re Brandywine Townhouses, Inc.*, No. 13-75582-BEM, 524 B.R. 889, 891 (Bankr. N.D. Ga. Nov. 7, 2014). Debtor cannot show concrete evidence of sufficient cash flow to fund and maintain both its operations and obligations under the Plan.

17. As in *Brandywine*, Debtor's Plan hinges on 90% occupancy, a feat never achieved by Debtor. *Id.* This Court found Brandywine's projections were not firmly rooted in objective fact. *Id.* Assuming Debtor could achieve 90% occupancy, which is unlikely, the Survey Report suggests that Debtor cannot find enough suitable residents to meet its goal. It further suggests that even if Debtor could reach its goal, it cannot reasonably manage that level of occupancy with its projected Budget for staffing.

18. Debtor has not accounted for the additional potential costs of a Patient Care Ombudsman, should there be any, additional quarterly UST fees since the appointment of an Ombudsman will require the case to remain open and not able to be dismissed as Debtor

5

anticipated, and additional expenses for increased staffing to address the serious complaints related to patient care raised by the Survey Report.

## II.     CONCLUSION

WHEREFORE, MidCap respectfully requests that the Court deny confirmation of Debtor's Plan.

Respectfully submitted, this 10th day of December, 2019.

/s/ Francesca Macchiaverna
Francesca Macchiaverna
Counsel for MidCap Funding Investment IV, LLC
Georgia Bar No. 462924
HUNTER, MACLEAN, EXLEY & DUNN, P.C.
200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone: (912) 236-0261
Facsimile: (912) 236-4936
fmacchiaverna@huntermaclean.com

4822-4846-1742 v1

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing OBJECTION TO CONFIRMATION OF CHAPTER 11 PLAN upon all parties to this matter by U.S. Mail or by the CM/ECF system which will send a notice of electronic filing to the following:

| | |
|---|---|
| Leslie M. Pineyro<br>JONES & WALDEN, LLC<br>21 Eighth Street, NE<br>Atlanta, GA 30309 | Office of the United States Trustee<br>Suite 362, Richard B. Russell Building<br>75 Ted Turner Drive, S.W.<br>Atlanta, Georgia 30303 |

Aspen Village At Lost Mountain Assisted
Living, LLC
2860 Overlook Court
Atlanta, GA 30324

This 10th day of December, 2019.

                                          HUNTER, MACLEAN, EXLEY & DUNN, P.C.

                                          s/ Francesca Macchiaverna
                                          Francesca Macchiaverna
                                          Georgia Bar No. 462924
                                          Attorney for MidCap Funding Investment IV, LLC

200 E. Saint Julian Street
Post Office Box 9848
Savannah, GA 31412-0048
(912) 236-0261

7

4822-4846-1742 v1