# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| In re: | CASE NO. 19-40262- BEM |
| ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC | CHAPTER 11 |
| | JUDGE ELLIS-MONRO |
| Debtor. | |
| MIDCAP FUNDING INVESTMENT IV, LLC, | |
| Movant | |
| v. | CONTESTED MATTER |
| ASPEN VILLAGE AT LOST MOUNTAIN ASSISTED LIVING, LLC, | |
| Respondent. | |

## MOTION FOR RECONSIDERATION OF ORDER ON CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED SEPTEMBER 13, 2019

COMES NOW, MidCap Funding Investment IV, LLC ("MidCap"), secured creditor of the Debtor Aspen Village at Lost Mountain Assisted Living, LLC, and files this Motion for Reconsideration of Order On Confirmation of Debtor's Third Amended Plan of Reorganization Dated September 13, 2019 (Doc. No. 158) (the "Order") pursuant to Federal Rule of Civil Procedure 59(e)[1], showing this Honorable Court as follows:

On September 19, 2019, the Court held a confirmation hearing to consider confirmation of the Third Modification to Plan of Reorganization (Doc No. 146) (the "Plan") filed by Aspen

---

[1] Rule 59(e) is made applicable to this contested matter pursuant to Federal Rules of Bankruptcy Procedure 9023.

Village at Lost Mountain Assisted Living, LLC (the "Debtor"). At this hearing, MidCap objected to confirmation arguing, among other things, that the Plan was not feasible because the Debtor's budget does not account for the increased costs necessary to adequately staff its facilities and the Debtor's projected occupancy levels are not attainable.

On November 26, 2019, the Court entered its Order, which contained findings of fact and conclusions of law regarding the feasibility of the Debtor's Plan. (Doc. No. 158) With regard to staffing, the Court found that the Debtor's assisted living facility, The Lodge at Aspen Village (the "Lodge"), was adequately staffed based, in part, upon the testimony of Dr. David Lovell and Joyce Pearson, that the Debtor has maintained staffing above state regulations and there had been no resident complaints indicating that staffing was insufficient. (*Id*. at p. 16). In addition, the Court found that the Debtor will likely be able to meet is occupancy projections due, in part, to its ability to raise the census at the Lodge from 61 to 71 resident during the pendency of its bankruptcy. (*Id.* at p. 13).

On November 23, 2019, the Atlanta Journal-Constitution published a newspaper article (the "Article") highlighting the results of its investigation into the quality of care at various senior care facilities in the Atlanta area, including the Lodge. A copy of the Article is attached hereto as Exhibit "A." [2] Among other things, the Article discussed an August 27, 2019 inspection survey completed by the Georgia Department of Community Health ("DCH") of the Lodge in response to complaints from residents of the Lodge. A copy of the August 27, 2019 Survey Report issued by DCH is attached hereto as Exhibit "B."

---

[2] The article can also be found online at the following address: https://www.ajc.com/news/state--regional/senior-home-gold-rush/30n0seXnMlGtEkC00PxRSK/.

2

According to the Survey Report, DCH cited the Debtor for four (4) serious violations of Georgia's Rules and Regulations for Personal Care Homes, including:

(1) failing to provide sufficient staff at meal times;

(2) failing to provide sufficient staff time such that each resident received proper care to prevent pressure ulcers and contractures;

(3) failing to ensure admission of only ambulatory residents who were capable of self-preservation with minimal assistance; and

(4) failing to retain a record of incidents and accidents.

*(See* Ex. B, Survey Report). As will be discussed below, the findings by DCH are rather alarming and demonstrate a severe inadequacy of staffing by the Debtor. The Survey Report also shows that the Debtor has improperly admitted residents who need greater care than can be provided at an assisted living facility such as the Lodge.

## APPLICABLE LAW

A motion for reconsideration under Federal Rule 59(e) is only appropriate where there is newly-discovered evidence or a need to correct a manifest error of law or fact. *See Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir.2008). Whether to grant a motion for reconsideration is within the sound discretion of the court. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir.1993).

MidCap acknowledges that the Court does not reconsider its orders as a matter of routine practice. *See* Local Bankruptcy Rule 9023-1. However, significant, newly-discovered evidence has come to light (i.e. the Survey Report), which contains information material to the Court's analysis of the feasibility of Debtor's Plan. As heard by the Court at the September 19, 2019 confirmation hearing, the findings contained in the Survey Report support MidCap's contention

3

that the Debtor's Plan is not feasible as the Debtor has failed to account for adequate staffing costs and has projected unattainable occupancy rates.

Contrary to the Debtor's assertion that patient care has drastically improved since the filing of the bankruptcy, the Survey Report reveals serious, longstanding staffing issues at the Lodge which have jeopardized the care of its residents. Since July 2019, the residents of the Lodge have held town hall meetings to voice their concerns about the inadequacy of dining room staffing, including the presentment of cold meals to residents. The Debtor's inadequate staffing also led to serious inadequacies in care, including a rather egregious instance wherein a resident's pressure ulcers rapidly progressed from Stage I to Stage III during his three months at the Lodge. This individual died while in the Debtor's care.

The Survey Report further reveals that the Debtor has improperly admitted residents who do not qualify for residence at the Lodge due to the level of treatment necessary for their care and well-being. Georgia's Rules and Regulations for Personal Care Homes provide that assisted living facilities are "permitted to admit and retain only ambulatory residents who are capable of self-preservation with minimal assistance. . ." Ga. Dep't Comm. Health R. 111-8-62-.15(1)(b). According to the Survey Report, of the four (4) residents observed by the DCH investigator, two (2) of them were incapable of ambulating on their own and were incapable of self-preservation. The Lodge is not a nursing home facility and does not have staff that are adequately trained to provide the level of care to residents who are incapable of self-preservation. Nonetheless, the Debtor has admitted such residents and, as shown in the Survey Report, endangered the life of at least one (1) resident by failing to provide adequate care for his pressure ulcers.

The Survey Report clearly shows that the Debtor is currently operating the Lodge at an inadequate and unsafe level of staffing. Accordingly, the Debtor's budget does not account for the

4

additional staffing expenses necessary to provide proper care of the Lodge's residents. This problem will only be compounded if and when the Memory Care facility is completed, as the Debtor projects only a minimal increase in staffing upon the facility's opening. Further, the Debtor's census levels may have been artificially inflated as the Debtor admitted residents who should not have never been admitted to the Lodge to begin with.

Even more concerning is that the Debtor was undoubtedly aware of the complaints of its residents and the investigation by DCH at the time of the confirmation hearing. Despite this knowledge, Ms. Pearson represented to the Court that there had been no complaints of inadequate staffing and that the Debtor had turned things around during the course of the bankruptcy. Based on the findings contained in the Survey Report, this certainly does not appear to be the case.

## CONCLUSION

Based on the foregoing, MidCap respectfully requests that this Court reconsider its Order and deny confirmation of the Debtor's Plan based upon a lack of feasibility.

Respectfully submitted, this 10th day of December, 2019.

> /s/ Francesca Macchiaverna
> Francesca Macchiaverna
> Counsel for MidCap Funding Investment IV, LLC
> Georgia Bar No. 462924
> HUNTER, MACLEAN, EXLEY & DUNN, P.C.
> 200 East Saint Julian Street
> Savannah, Georgia 31412-0048
> Telephone: (912) 236-0261
> Facsimile: (912) 236-4936
> fmacchiaverna@huntermaclean.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing MOTION FOR RECONSIDERATION OF ORDER ON CONFIRMATION OF DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION DATED SEPTEMBER 13, 2019 upon all parties to this matter by U.S. Mail or by the CM/ECF system which will send a notice of electronic filing to the following:

Leslie M. Pineyro
JONES & WALDEN, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Office of the United States Trustee
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Aspen Village At Lost Mountain Assisted Living, LLC
2860 Overlook Court
Atlanta, GA 30324

This 10th day of December, 2019.

HUNTER, MACLEAN, EXLEY & DUNN, P.C.

s/ Francesca Macchiaverna
Francesca Macchiaverna
Georgia Bar No. 462924
Attorney for MidCap Funding Investment IV, LLC

200 E. Saint Julian Street
Post Office Box 9848
Savannah, GA 31412-0048
(912) 236-0261

6

4813-4640-9646 v1